718 So.2d 312 (1998)
STATE of Florida, Appellant,
v.
Antonio Dewayne CHESTNUT, Appellee.
No. 97-1094.
District Court of Appeal of Florida, Fifth District.
September 11, 1998.
Robert A. Butterworth, Attorney General, Tallahassee, and Kelli R. Orndorff, Assistant Attorney General, Daytona Beach, for Appellant.
James B. Gibson, Public Defender, and Rosemarie Farrell, Assistant Public Defender, Daytona Beach, for Appellee.
HARRIS, Judge.
Antonio Chestnut and several others were "beating up on a cab driver" outside a convenience *313 store when Roger Hicks pulled up in his truck delivering milk. Chestnut grabbed Hicks and asked if he "wanted some of that, too." Hicks told the group to stay away from his truck and went on with his delivery. After the delivery was completed, Hicks proceeded to his next stop. As Hicks was pulling away from this delivery, an object hit the front windshield of his truck shattering the glass. Hicks stopped the truck and Chestnut reached through the driver's open window with a "razor knife" slashing Hicks on the shoulder and warned him that he had better "not let them know what happened over at the Handy Way." Hicks pulled away, returned to the Handy Way where the police were investigating the earlier incident, and reported Chestnut's attack on him.
Chestnut was convicted of burglary while armed with a dangerous weapon and aggravated battery. The judge, over the State's objection, chose not to enter a guideline sentence and departed downward. He withheld adjudication, placed Chestnut on concurrent two year periods of probation, and ordered that Chestnut serve 180 days in the county jail with credit for the 122 days previously served. The judge's reasons for departing were:
1. The offense was committed in an unsophisticated manner and was an isolated incident for which the defendant has shown remorse.
2. The defendant poses little or no threat to society.
3. The defendant is a young man with a minimal record and excellent prospects for rehabilitation.
4. The defendant has strong family support.
5. The long term consequences of a prison sentence in this case.
The State appeals the downward departure and we reverse finding either that the record does not support these reasons for departure or that the reasons themselves are insufficient as a matter of law.
We agree that the first stated reason, the only statutory reason relied on by the court, is not supported by the record. We are not as certain as the trial judge that smashing the windshield of a truck in order to stop it so that the driver can be assaulted is an unsophisticated manner of doing so. Nor, based on the testimony of Mr. Hicks that the incident arose from his witnessing the altercation at the Handy Way, do we find the offenses to be isolated. We are certain that Chestnut's denial of doing "what I was accused of" is not the kind of remorse contemplated by the legislature. The fact that Chestnut is sorry that Hicks was injured by another is sympathy and not remorse.[1]
The court's nonstatutory reasons for downward departure require that we consider the nature of the reasons given in light of the stated legislative sentencing policy. To begin with, the legislature is serious about sentencing. "A downward departure from the permissible sentence is discouraged unless there are circumstances or factors that reasonably justify the downward departure." Section 921.0026(1), Florida Statutes. The mitigating factors specifically listed by the legislature focus on the nature of the crime, the conduct of the defendant or the mental capacity, condition, or attitude of the defendant. Further, the first purpose of sentencing is to punish, not rehabilitate. Finally, the legislative sentencing policy is to ensure that violent criminals are incarcerated.
Do the nonstatutory reasons for downward departure given by the court herein "reasonably justify" the court's decision to put rehabilitation before punishment in electing not to incarcerate (for a meaningful period) this violent criminal?
Does "the defendant is a young man [he was 22 at the time of the offense] with a minimal record and excellent prospects for rehabilitation" meet the legislative policy for departing downward? We think not. The legislature specifically authorized departure if the defendant has diminished capacity to appreciate the criminal nature of his act. *314 This diminished capacity might result from tender years or from mental illness or even addiction. Chestnut is a college student who dropped out to try life on his own. Permitting Chestnut to resume his college studies as rehabilitation hardly seems a sentence "commensurate with the severity of" his offense. Section 921.001(4)(a)3, Florida Statutes.
Does "the defendant has strong family support" meet the legislative requirements for downward departure? We think not. We too are impressed with the defendant's family. We wonder why with such strong family support the defendant committed such violent acts. What we do know is that the family has always been there, and will probably always be there, to support and encourage this defendant to do right and do well. And while we hope that when this ordeal is over that the defendant will listen to and follow the advice of his family, we do not believe that the legislature intended that a defendant from an exemplary family should be excused from serving the sentence recommended for his offense. This is the mirror image of the argument that we should excuse the conduct of those from dysfunctional families. If we also excuse orphans, then there would be no one subject to guideline sentencing.
Does the fact that a prison term might have long term consequences on the defendant justify mitigation? The trial judge acknowledges that it does not. But he reasons that together with the other factors it might weigh in favor of mitigation. We disagree. It is obvious that prison will always be detrimental to one's future even if it is essential to his appropriate punishment. But the consequence of no prison for violent criminals seems a far worse societal problem.
We are impressed with the sentencing order prepared by the judge below. It is a thoughtful analysis of a sentencing alternative in this case. It is well drafted and, we believe, a sincere statement of what this judge, a member of the Florida Sentencing Commission, believes the law is or should be. But his views which lean toward rehabilitation rather than punishment should be taken up first with the Commission and then with the legislature. His views are not, in our view, consistent with the current legislative policy.
REVERSED for resentencing within the recommended sentencing range.
DAUKSCH, J., concurs.
GRIFFIN, C.J., concurs in result only.
NOTES
[1] The court's order acknowledges that Chestnut denied doing the crime but found that "he has expressed concern for the victim and is remorseful that the incident occurred. The court accepts this as being sufficient."