ON MOTION FOR REHEARING EN BANC
ROWE, J.
We grant the State’s motion for rehearing en banc, vacate our prior opinion issued on November 28, 2016, and substitute the following opinion:
*346 Brian Mitchell Lee challenges his convictions for.(l) traveling to meet a minor to engage in sexual conduct; (2) the unlawful use of a two-way communications device to facilitate the commission of a felony; and (3) using a computer to facilitate or solicit the sexual conduct of a child. We affirm as to .all issues raised by Lee, but write to address only one. He argues that the decisions in State v. Shelley, 176 So.3d 914 (Fla. 2015), and Hamilton v. State, 163 So.3d 1277 (Fla. 1st DCA 2015), compel reversal of two of his convictions on double jeopardy grounds. The State seeks review of the trial court’s departure sentence in a separate appeal.[1]
We-affirm Lee’s convictions for all three offenses because, unlike in Shelley .and Hamilton, his multiple convictions .were not based on the same conduct. Rather, Lee’s convictions arose from separate criminal episodes and distinct criminal acts; thus, they do not violate the prohibition against double jeopardy. But we reverse Lee’s sentences and remand for resentencing because the trial court improperly departed . downward when imposing the sentences.
. I. Facts & Procedural History
Lee placed an ad in the Casual Encounters section of Craigslist, seeking an encounter with a male “under 25” years old. An investigator presenting himself as “Matt” responded to Lee’s ad after he determined the ad could be an effort1 to initiate contact with a minor. The investigator promptly informed Lee that “Matt” was only fourteen years old. But even after learning that “Matt” was a minor, Lee continued the communications. Over the course of the next eleven days, the two exchanged multiple emails and Lee proposed that the two engage in various sexual acts. On the twelfth day, Lee asked to meet “Matt” in person. When Lee arrived at the agreed-upon location, he was met by law enforcement and arrested. A search of his truck revealed erectile dysfunction medications.
The State charged Lee by information with three felony offenses: traveling to meet a minor to engage in sexual conduct, unlawful use of a two-way communications devicé to facilitate the commission of a felony, and using a computer to facilitate or solicit the sexual conduct of a child. Lee moved to dismiss the charges, arguing that counts one and three violated double jeopardy, because the elements of solicitation were.subsumed within the offense of traveling to meet a minor. He also argued that counts one and two violated double jeopardy, because the, .elements of using a two-way communications device were subsumed within the offense of traveling, and that both offenses occurred within a single episode. The trial court denied the motion, and the case proceeded to trial..
Through the testimony of the investigating officer, the State introduced into evidence the entire transcript of the communications between Lee and “Matt.” The testimony demonstrated that the communications occurred over the course of twelve days and involved multiple acts of solicitation.
After the State rested, Lee admitted during his testimony that the transcript of communications introduced into evidence was accurate. He' asserted that he placed the ad on Craigslist to meet adult males. He declared ■ that he was certain that “Matt” was a police officer from the beginning, but decided to play along because he wanted to “get back” at the police for targeting homosexuals in these types of *347 undercover operations. Dr. Julie Harper, a clinipal and forensic psychologist, testified .that Lee had a narcissistic and obsessive compulsive personality and that he had previously been diagnosed with depression. She described Lee, a family physician, as highly intelligent with a lot of inner pain and low self-esteem.
The jury returned a guilty verdict on all three counts, and the case proceeded to sentencing. Lee’s Criminal Punishment Code scoresheet established a minimum permissible sentence of forty-five months’ imprisonment. He filed a sentencing memorandum, requesting a downward departure based on several non-statutory miti-gators. At sentencing, Lee presented the testimony of two employees, four former patients, and his brother. Defense counsel argued that the trial court should downwardly depart because Lee never had sexual contact with a minor, he showed great potential for rehabilitation, he maintained a close relationship with his family, and he lacked any history of prior criminal activity. The State specifically argued that none of those factors warranted the imposition of a downward departure sentence and argued against the trial court imposing such a sentence. The State argued that Lee was a danger to the community and that the court should impose a sentence of no less than five years’ imprisonment.
Before imposing Lee’s sentences, the trial court noted that Lee had virtually no prior criminal record and that it had not been proven that Lee had any inappropriate physical contact with a child. The court observed that it was uncontradicted that Lee was suffering from depression when he committed these crimes. The court also considered that countless patients continued to seek treatment from Lee during the pendency of these charges.
The court departed downward, declining to impose a term of imprisonment, instead sentencing Lee to concurrent terms of two years’ community control followed by thirteen years’ probation. On the Criminal Punishment Code scoresheet, the trial court specified that the departure sentence was based on the statutory mitigator that Lee required specialized treatment for a mental disorder that was unrelated to substance abuse or addiction. The court further indicated its reliance on the non-statutory mitigators announced at the sentencing hearing. This' appeal and cross-appeal follow.'

II. Analysis

We begin our analysis with a discussion of double jeopardy principles, including: (i) which party bears the burden to demonstrate a double jeopardy violation;, (ii), the three-step test to be applied to determine whether multiple convictions violate the prohibition against double jeopardy; and (iii) the factors and evidence to be considered when applying the three-step test. Next, we explain why the lioldings in Shelley and Hamilton have no application to our double jeopardy analysis in this case. Then, we apply these principles to explain why Lee’s multiple convictions do not violate the prohibition against double jeopardy. Finally, we explain why the trial court erred .in imposing the downward departure sentence.

A. Double Jeopardy Principles

The Double Jeopardy Clause provides protection from three separate types of double jeopardy. ‘-[It] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.” Ohio v. Johnson, 467 U.S. 493, 498, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984) (quoting North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)). Here, Lee argues that he received multiple punish *348 ments for the same offense; thus our analysis concerns this type of double jeopardy claim.

i. Burden to Demonstrate a Double Jeopardy Violation

The party alleging error bears the burden to demonstrate reversible error on appeal. See Stone v. Stone, 873 So.2d 628, 630 (Fla. 2d DCA 2004). And when it is a defendant appealing a trial court’s ruling, “the defendant bears the burden of demonstrating that an error occurred in the trial court.” Jones v. State, 923 So.2d 486, 488 (Fla. 2006) (quoting Goodwin v. State, 751 So.2d 537, 544 (Fla. 1999)). A defendant alleging a double jeopardy violation is in no different position; it remains the defendant’s burden to establish that a double jeopardy violation has occurred. See Sprouse v. State, 208 So.3d 785, 787 (Fla. 1st DCA 2016) (“Sprouse has not met his burden of showing his multiple convictions violate double jeopardy.”); Edwards v. State, 139 So.3d 981, 983 (Fla. 1st DCA 2014) (“The burden of proof was Edwards’ to demonstrate error in this case.”); see also Capron v. State, 948 So.2d 954, 957 (Fla. 5th DCA 2007) (observing that a defendant bears the burden of proving a double jeopardy violation). And after a jury trial, the burden to demonstrate error is especially heavy as the reviewing court must view “the evidence in the light most favorable to the jury verdict.” Williams v. State, 90 So.3d 931, 933 (Fla. 1st DCA 2012).

ii. Three-Step Test for Analyzing Double Jeopardy Claims Alleging Multiple Punishments

A court reviewing a double jeopardy claim alleging multiple punishments must apply a three-step test. State v. Paul, 934 So.2d 1167, 1172-73 (Fla. 2006). We explained how the test should be applied in Partch v. State, 43 So.3d 758, 760 (Fla. 1st DCA 2010): First, we must determine whether the convictions “were based on an act or acts which occurred within the same criminal transaction and/or episode.” Id. Second, if the convictions arose from the same criminal episode, we “must then determine if the convictions were predicated on distinct acts.” Id. Third, “[i]f the charges are not predicated on distinct acts and have occurred within the same criminal episode, we must next decide if the charges survive a same elements test as defined by section 775.021, Florida Statutes [ (2013) ], commonly referred to as the Blockburger analysis.” Id. (citing to Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)). Thus, we only reach the third step of the analysis, the so-called “same elements” test, if the first two questions are answered in the negative. See Graham v. State, 207 So.3d 135, 141 (Fla. 2016) (clarifying that the same elements test applies when a defendant is convicted under multiple statutes for a single criminal act); Tindal v. State, 145 So.3d 915, 923-34 (Fla. 4th DCA 2014) (engaging in same elements analysis only after concluding that the offenses occurred during the same criminal episode and that the charges were not based on distinct acts); Sanders v. State, 101 So.3d 373, 375 (Fla. 1st DCA.2012) (explaining that if the charged offenses occurred in separate episodes or involved distinct acts, no further analysis is required to conclude that the offenses do not violate double jeopardy).

Hi. Factors and Evidence to Consider in Each Step

Each of the three steps of the double jeopardy test requires application of different factors and consideration of specific types of evidence. In the first step, when determining whether the defendant’s convictions arose from offenses occurring in one or more criminal episodes, the re *349 viewing court examines “whether there are multiple victims, whether the offenses occurred in multiple locations, and whether there has been a ‘temporal break’ between offenses.” Paul, 934 So.2d at 1173 (quoting Murray v. State, 890 So.2d 451, 453 (Fla. 2d DCA 2004)), The existence of a separation in time, place, or circumstance allows the court to ascertain “whether the defendant had time to pause, reflect, and form a new criminal intent between occurrences.” Hammel v. State, 934 So.2d 634, 635 (Fla. 2d DCA 2006) (quoting Eaddy v. State, 789 So.2d 1093, 1095 (Fla. 4th DCA 2001)). Minimal lapses in time can be sufficient for a defendant to form a new criminal intent between offenses. See White v. State, 924 So.2d 957, 957-58 (Fla. 4th DCA 2006); Burrows v. State, 649 So.2d 902, 903 (Fla. 1st DCA 1995) (superseded by statute on other grounds as stated in Jupiter v. State, 833 So.2d 169 (Fla. 1st DCA 2002)).
When determining whether offenses occurred during the same criminal episode, the reviewing court examines the entire record, including all evidence admitted at trial. See Edwards, 139 So.3d at 982 (examining the record to determine whether the defendant’s convictions arose from a single criminal episode); Sanders, 101 So.3d at 375 (relying on the record to determine whether appellant’s convictions arose from offenses occurring in the same criminal episode); Williams, 90 So.3d at 933 (relying on the record to determine whether appellant’s convictions were based on offenses occurring in a single criminal episode); Nicholson v. State, 757 So.2d 1227 (Fla. 4th DCA 2000) (holding that the defendant’s convictions under identically worded counts of throwing a deadly missile into a dwelling did not violate double jeopardy because the evidence presented at trial clearly distinguished between the two counts).
If, and only if, we determine that multiple offenses occurred during a single criminal episode do we proceed to the second step of the test. This step involves the determination of whether the offenses are based on distinct criminal acts. In assessing whether acts are distinct, the reviewing court examines “whether there was (1) a temporal break between the acts, (2) intervening acts, (3) a change in location between the acts; and/or (4) a new criminal intent formed.” Partch, 43 So.3d at 761 (citing Hayes v. State, 803 So.2d 695, 700 (Fla. 2001)). The Florida Supreme Court has described a distinct act as:
“[W]hen the impulse is single, but one indictment lies, no matter how long the action may continue. If successive impulses are separately given, even though all unite in swelling a common stream of action, separate indictments lie.” Wharton’s Criminal Law (11th Ed.) § 34. Or, as stated in note 3 to that section, “The test is whether the individual acts are prohibited, or the course of action which they constitute. If the formér, then each act is punishable separately. If the latter, there can be but one penalty.”
Graham, 207 So.3d at 139 (quoting Blockburger, 284 U.S. at 302, 52 S.Ct. 180). A similar analysis was applied in R.J.R. v. State, 88 So.3d 264, 268 (Fla. 1st DCA 2012), when’ this Court observed, “the State failed to establish that the acts occurred in different locations, that there was any temporal break between the two acts that would have enabled R.J.R. to reflect and form a new criminal intent for the second act, or that there were any intervening acts interrupting RJ.R.’s resisting arrest.”
Just as was required in the first step of the test, step two requires the examination of the entire record before a court may conclude that multiple acts are distinct for double jeopardy purposes. See *350 Graham, 207 So.3d at 141 (relying on the record to determine whether the defendant’s multiple convictions were based on distinct acts); McCarter v. State, 204 So.3d 529, 530 (Fla. 1st DCA 2016) (concluding that,, the record established two distinct acts of solicitation, a request for illicit pictures and a solicitation for a lewd or lascivious molestation, to support appellant’s dual convictions for solicitation and traveling). This Court applied the distinct acts test in our decision in Harris v. State, 111 So.3d 922, 924 (Fla. 1st DCA 2013), and examined the entire record to determine whether the facts reflected “an uninterrupted series of acts, as opposed to distinct acts separated by time, intervening acts, or different locations.”
Third, and only after determining that the conduct involved did not arise from separate criminal episodes or distinct acts occurring during a single criminal episode, the reviewing court must apply the third step of the analysis, same elements test. In this step, the court must determine whether each of the charged offenses requires proof of an element that the other does not. § 775.021(4)(a), Fla. Stat. .(2013). The general rule is that the Legislature intends to allow punishment for each criminal offense committed during a single criminal episode or transaction, Harris, 111 So.3d at 924. But three statutory exceptions to that rule must be considered, to wit:
1. Offenses which require identical elements of proof.
..2, Offenses which are degrees of the same offense as provided, by statute.
3, Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.
§ 775.021(4), Fla. Stat. (2013).,
Significantly, when applying the same elements test, the reviewing court’s analysis is limited to examining the elements of the statute, “without regard to the accusatory pleading or the proof adduced at trial.” § 775,021(4)(a), Fla. Stat. (2013); see also Glover v. State, 29 So.3d 325, 326 (Fla. 1st DCA 2010) (explaining that the examination of facts is improper when applying the same elements test). The supreme court recently reaffirmed the requirement to examine only the elements of the statutes involved when applying the third step of the double jeopardy analysis. See Roughton v. State, 185 So.3d 1207, 1210 (Fla. 2016) (holding that an examination of anything other than elements of the charged offenses was contrary to the plain language of the statute).

B, Shelley and Hamilton

Lee argues that the supreme court’s decision in Shelley and our court’s decision in Hamilton require reversal of his convictions for unlawful use of a two-way communications device and solicitation because both offenses are subsumed within his conviction for traveling after solicitation. We disagree. Both Shelley and Hamilton are cases where the reviewing court has proceeded to the third step of the double jeopardy analysis and applied the same elements test. Thus, the holdings in those cases apply only where the reviewing court has determined that the defendant’s convictions were based on conduct which occurred in a single criminal episode and did not involve distinct criminal acts. And neither decision disturbs well-established precedent that double jeopardy “does not prohibit multiple convictions and punishments where a defendant commits two or more distinct criminal acts.” Hayes, 803 So.2d at 700 (emphasis in original). Because Lee’s convictions arise both from separate criminal episodes and distinct criminal acts, the rationale in Shelley and Hamilton is not applicable and does not bar his multiple convictions.

*351
i Shelley

Following a plea, Shelley was convicted of a single count of traveling and a single count of solicitation. Shelley, 176 So.3d at 916-17. Shelley argued that his convictions violated double jeopardy because solicitation was a lesser-included offense of traveling after solicitation. On review, the supreme court agreed that a double jeopardy violation occurred. The court did not expressly analyze whether Shelley’s convictions for traveling and solicitation arose from separate criminal episodes or involved distinct criminal acts. Id. at 917-19. Instead, the court limited its analysis to applying the third step of the double jeopardy test. However, the supreme court applied only this step of the analysis because it concluded Shelley’s dual convictions were based on the same conduct.
Although Shelley communicated “[o]ver the course of several days” with an undercover officer “posing as a single. mother nudist ‘looking for family'fun,’ ” the court’s opinion indicates that only a single act of solicitation was involved. Jd. at 916. The supreme court specifically observed that the “State relied upon the same conduct to charge both offenses.” Id. at 917 (emphasis added). And the court expressly held that “Shelley’s dual convictions for solicitation and traveling after solicitation based on the same conduct impermissibly place[d] him in double jeopardy.” Id. at 919 (emphasis added). Thus, because it concluded that Shelley’s offenses were based on a single criminal act of solicitation, the court proceeded to apply the same elements test to determine whether the elements of solicitation were subsumed by the elements of traveling after solicitation. Id. at 919; see also Graham, 207 So.3d at 141 (holding that when a defendant is convicted under multiple statutes for a single criminal act, a reviewing court applies the same elements test); Tindal, 145 So.3d at 923-24 (applying the same elements test only after concluding, that the offenses occurred during the same criminal episode and that the offenses were not based on distinct acts).
When applying the third step, the court examined the language in . section 847.0135(3), Florida Statutes, in which the Legislature authorized separate punishments for each use of a computer service or device to solicit a child and determined that this language failed to “address what effect charging a solicitation, offense has on the State’s ability to use the same solicitation to charge the defendant with traveling after solicitation.” Id. at 919 (emphasis added). Holding that this intent did not translate into an intent to authorize separate convictions for conduct that con■stituted both solicitation and traveling after solicitation, the court applied the same elements test and determined that the elements of solicitation were subsumed within the elements of traveling after solicitation.
Thus, the supreme court’s holding is that “dual convictions for solicitation and traveling after solicitation” violate double jeopardy when they are “based on the same conduct.” Id. at 919. Shelley does not proscribe convictions for traveling and solicitation based on either (1) multiple acts of solicitation that occur during separate criminal episodes or (2) distinct acts of solicitation that occur during a single criminal episode. And Shelley does not disturb well-established precedent allowing for multiple punishments where a defendant commits multiple criminal acts. Accordingly, dual convictions for solicitation and traveling are not barred by Shelley and do not violate double jeopardy, if the record demonstrates that the defendant made two or more solicitations. Rather, the holding in Shelley is limited to cases where the defendant is convicted of both solicitation *352 and traveling after solicitation based on a single act of solicitation.

ii. Hamilton

Lee also attempts to rely on our decision in Hamilton to argue that his charges of traveling after solicitation and unlawful use of a two-way communications device violate double jeopardy, but his argument fails. 163 So.3d at 1278. Hamilton argued that his convictions for both offenses arose from the same criminal episode, and thus, violated double jeopardy because the elements of unlawful use of a two-way communications device were subsumed within the elements of traveling after solicitation. Id. We agreed and held that dual convictions for traveling after solicitation and unlawful use of a two-way communications device violated the prohibition against double jeopardy, when the offenses occurred during the course of the same criminal episode. Id. at 1278-79. Although this Court did not expressly examine whether there were distinct acts of solicitation, we implicitly did so by proceeding to step three of the double jeopardy analysis and examining whether the offenses contained the same elements. See Tindal, 145 So.3d at 923-24; Sanders, 101 So.3d at 375. Applying the same elements test, we concluded that Hamilton’s dual convictions violated double jeopardy. Hamilton, 163 So.3d at 1279.
Based on our holding that Hamilton’s multiple convictions arose from a single criminal episode and our application of only the third step of the double jeopardy test, Hamilton does not proscribe convictions for-traveling after solicitation and use of a two-way communications device based either on distinct acts of solicitation occurring in multiple criminal episodes or on distinct acts of solicitation occurring in a single criminal episode. Rather, the holding in Hamilton, like the holding in Shelley, is limited to cases where the defendant is charged with multiple offenses based on a single act of solicitation.

Hi Post-Shelley and Hamilton Decisions

In some recent decisions, our sister courts have misconstrued the holdings of Shelley and Hamilton in one or more of the following respects.[2] First, in some cases ostensibly involving separate criminal episodes or distinct acts, the courts appear to have proceeded directly to the third step of the double jeopardy analysis without examining whether the offenses arose from separate criminal episodes or distinct acts. See, e.g., Thomas v. State, 209 So.3d 35, 35 (Fla. 2d DCA 2016) (concluding, despite evidence at trial of “increasingly lurid text messages and communications” over the course of four days, that appellant’s convictions for traveling and solicitation violated double jeopardy by examining only the charging documents and without analyzing whether his convictions were based on distinct acts of solicitation); Stapler v. State, 190 So.3d 162, 164 (Fla. 5th DCA 2016) (finding a double jeopardy violation despite evidence of multiple acts of solicitation, and expressly declining to consider any information outside of the charging document). Those courts should have applied the three-step analysis outlined in Paul and Partch and determined whether the convictions in those cases arose from a single criminal episode or whether the convictions were based on distinct acts before proceeding to the same elements test.
Second, other courts have applied the first two steps of the double jeopardy *353 analysis but limited their review of the record to the charging document and the jury verdict. See, e.g., Honaker v. State, 199 So.3d 1068, 1068 (Fla. 5th DCA 2016) (granting relief on appellant’s postconviction double jeopardy claim by relying on the information to determine whether offenses arose from the same conduct despite evidence at trial that the defendant engaged in “inappropriate communications” over the course of four days); Mizner v. State, 154 So.3d 391, 400 (Fla. 2d DCA 2014) (declining to consider the State’s argument that the evidence at trial showed that the offenses occurred on different days during separate criminal' episodes because the information was not sufficiently specific). But, the proper application of steps one and two of the double jeopardy analysis necessarily requires an examination of the entire evidentiary record—examination of separate criminal episodes and distinct criminal acts should not be limited to the charging document and the jury verdict.
Third, it appears that some courts have implicitly and erroneously shifted the burden to the State to show that the jury’s multiple guilty verdicts were not based on a single act of solicitation, rather than requiring the appellant to show that the record could not support convictions for multiple offenses.[3] See, e.g., Holt, 173 So.3d at 1081 (holding that it may not assume that offenses were predicated on distinct acts where neither the charging information nor the jury verdict form included specific language predicating the charges on distinct acts). But in double jeopardy cases, it is the appellant’s burden to demonstrate that an error occurred at the trial level, not the State’s burden to show that error did not occur. See Edwards, 139 So.3d at 983; Capron, 948 So.2d at 957.

C. Application of the Three-Step Test to Lee’s Multiple Convictions

Initially, we observe that the previous majority opinion implicitly shifted the burden to the State to show that the jury did not convict Lee of all three offenses based on a single act of solicitation when it held:
In this case, although the proof at trial of text messages over several days established multiple uses of Appellant’s cell phone to facilitate a felony and also established multiple solicitations, we cannot presume with certainty that Appellant was not convicted of the same act in all three counts. The information in this case did not allege distinct acts; the verdict form did not separate the acts; and the evidence presented to the jury could support, but did not require, the jury to find that the acts underlying Appellant’s conviction were separate. Therefore we find that a double jeopardy violation has ■ occurred.
*354 Lee v. State, 2016 WL 6928551, *4 (Fla. 1st DCA Nov. 28, 2016) (emphasis added). We repeat that it is the defendant’s burden to demonstrate on appeal that his convictions violate double jeopardy, not the State’s burden to prove the negative. See Sprouse, 208 So.3d at 787; Edwards, 139 So.3d at 983. Consequently, having vacated our opinion issued on November 26, 2016, we consider Lee’s claim of a double jeopardy violation under the framework outlined in Section A of this opinion.
To prevail on both of his double jeopardy claims, Lee must show that his convictions were based on the same act of solicitation. But his claims must fail, if the record establishes three or more criminal episodes of solicitations or three or more distinct acts of solicitation. A separate solicitation is required to support each of the counts charged in the information. One solicitation is required to support Lee’s traveling after solicitation conviction, because all of the elements of solicitation are subsumed within the offense of traveling after solicitation. Shelley, 176 So.3d at 919. A second solicitation is required to support Lee’s conviction for. unlawful use of a two-way communications device. Hamilton, 163 So.3d at 1279. And a third solicitation is necessary to support the solicitation conviction.
The State charged Lee as follows:
BRIAN MITCHELL LEE, on or about January 2, 2014, at and in Es-cambia County, Florida, did knowingly travel any distance either within this state, to this state, or from this state by any means, or who attempted to do so, for the purpose of engaging in any illegal act described in Chapter 794, Chapter 8Ó0, or Chapter 827, Florida Statutes, or to otherwise engage, in other unlawful sexual conduct with a child less than 18 years of age or with another person believed by the said BRIAN MITCHELL LEE to be a child less than 18 years of age, after using a computer on-line service, Internet service, local bulletin board service, or any other device capable of electronic data storage or transmission to seduce, solicit, lure or entice or attempted to seduce, solicit, lure, or entice a child or another person believed by BRIAN MITCHELL LEE to be a child, .to-wit: a law enforcement officer posing as a 14-year-old male child, to engage in any illegal act described in Chapter 794, Chapter 800, or Chapter 827, Florida Statutes, or to otherwise engage in other unlawful sexual conduct with a child, in violation of Section 847.0136(4)(a), Florida Statutes. BRIAN MITCHELL LEE, on one or more occasions between December 22, 2013, and January 1, 2014, at an in Escambia County, Florida, did unlawfully and knowingly use a two-way communication device, to-wit: cellular telephone, to facilitate or further the commission of a felony offense, to-wit: Traveling to Meet a Minor to Engage in Sexual Conduct, in violation of Section 934.216, Florida Statutes.
BRIAN MITCHELL LEE, on one or more occasions between December 22, 2013, and January 1, 2014, at and in Escambia County; Florida, did knowingly utilize a computer on-line service, Internet service, dr local bulletin board service, or any other device capable of electronic" data storage or transmission to seduce, solicit, lure, or entice, or attempt to seduce, solicit, lure, or entice a child or another person believed by the said BRIAN MITCHELL LEE to be a child less than 18 years of age, to-wit: a law enforcement officer posing as a 14-year-old male child, to commit any illegal act described in Chapter 794, relating to sexual battery; Chapter 800, relating to lewdness and indecent exposure; or Chapter 827, relating to child *355 abuse, or to otherwise engage in any unlawful sexual conduct with a child or with another person believed by the said BRIAN MITCHELL LEE to be a child, in violation of Section 847.01325(3)(a), Florida Statutes.
Thus, the unlawful use of the two-way communications device and solicitation counts were charged as occurring “on one or more occasions between December 22, 2013 and January 1, 2014.” The traveling after solicitation count was charged as occurring on January 2, 2014. But because there was no evidence of a solicitation on January 2, 2014, the solicitation required to support the traveling count must have occurred during the period the parties were communicating via email: December 22, 2013 through January 1, 2014. The solicitations required to support the other two counts also must have occurred during the same eleven-day period.
Based on the unambiguous language of the information, Lee was on notice and the jury could find that Lee committed multiple acts of solicitation during the charged period. Further, neither the jury instructions nor the verdict' form limited the jury to considering only one act of solicitation for all three offenses. Rather, both were general and contained no reference to any date or any specific act of solicitation.
But despite the express language of the information alleging one . or more acts of solicitation over the course of eleven days, Lee argues that the charging documents, jury instructions, and the verdict form were not sufficiently specific to allow the jury to base each of his convictions on a separate solicitation.[4] This argument is meritless for two reasons. First, the State is not required to allege in the information the specific solicitation associated with each count charged in the information or listed on the verdict form to defeat a double jeopardy claim.[5] See Fravel v. State, 188 So.3d 969, 971 (Fla. 4th DCA 2016) (holding that double jeopardy was not implicated by a two-count information that charged the defendant with two degrees of the same offense where the evidence at trial clearly distinguished between the two counts); Nicholson, 757 So.2d at 1228 (rejecting a double jeopardy claim based on two counts of throwing an object into a house where “the evidence at trial clearly distinguished between the two separate offenses.”). Second, to determine whether multiple solicitations occurred during different criminal episodes or whether there were distinct acts of solicitation within a single criminal .episode, we are required to review the record in its entirety. Graham, 207 So.3d at 141 (relying on evidence presented at trial to determine whether appellant’s convictions were based on distinct acts); Sanders, 101 So.3d at 375 (relying on the record-to determine whether appellant’s convictions occurred in the same criminal episode). When viewed in the light most favorable to the jury’s verdict, the record shows that Lee’s convictions were based on conduct that occurred during separate criminal episodes and in *356 volved at least five distinct acts of solicitation.

i. Step One—Lee’s Solicitations Occurred During Multiple Criminal Episodes

To determine whether Lee’s multiple convictions arose from conduct occurring during a single criminal episode, we consider the following factors: whether there were multiple victims, whether the criminal offenses occurred in multiple locations, and whether there was a temporal break between offenses. Partch, 43 So.3d at 760. It is undisputed that this case does not involve multiple victims. However, the record demonstrates that over the course of eleven days, Lee committed multiple acts of solicitation using his two-way communications device from multiple locations. The trial testimony established that Lee solicited the investigator using his mobile phone from his home, from his office, and from the dog track.
In addition to the undisputed evidence of multiple locations, there were several significant temporal breaks between Lee’s solicitations of the person he thought was a fourteen-year-old.[6] A review of the emails in the reeord shows that almost thirteen hours elapsed between Lee’s first and second conversations with the investigator. The longest temporal break in communication was seventy-two hours; this occurred when Lee traveled out of state for the holidays. Another significant break in communication occurred between December 26 and December 27 when over sixteen hours elapsed before Lee and the investigator resumed communication. And, during the next four days, there were five-hour, eleven-hour, and twelve-hour breaks in their conversations. The email communications show that Lee slept, went to work, traveled, and socialized when he was not communicating with “Matt.” These breaks gave Lee ample opportunity to pause and reflect on the legality of his actions. White, 924 So.2d at 957-58 (holding that appellant had time to form a new criminal intent while waiting for the victim to emerge from the bathroom); Duke v. State, 444 So.2d 492, 494 (Fla. 2d DCA 1984) (holding that “a matter of seconds” was sufficient for appellant to form a new criminal intent between sexual battery offenses); Bass v. State, 380 So.2d 1181, 1183 (Fla. 5th DCA 1980) (holding that the time it took appellant to drive to a more isolated location was sufficient for appellant to form a new criminal intent between sexual battery offenses).
Thus, viewing the record in the light most favorable to the July’s verdict, we hold that the solicitations in this case occurred during the course of multiple criminal episodes. Therefore, Lee cannot show he was convicted for multiple offenses of solicitation arising from the same criminal episode. This conclusion alone is sufficient to defeat his double jeopardy arguments. See Hammel, 934 So.2d at 635 (holding that appellant was properly charged for each internet conversation without violating double jeopardy protections because each conversation was a distinct criminal episode).

ii Step Two—Lee’s Multiple Distinct Acts of Solicitations

However, even were we to assume that the conversations between Lee and the investigator should be treated as a single ongoing eleven-day criminal episode, we would conclude that the record includes evidence of multiple, distinct acts of solici *357 tation. In assessing whether Lee’s acts during the eleven-day conversation constitute distinct acts, we examine the record to determine whether there were temporal breaks, intervening acts, changes in locations, and time to form a new criminal intent between Lee’s solicitations. Partch, 43 So.3d at 761. As discussed above, the record must show at least three separate and distinct acts of solicitation to uphold Lee’s convictions.
The uncontroverted record before this Court shows that Lee solicited the investigator at least five times for different unlawful acts, from different locations, and at different times via a two-way communications device (his mobile phone):
1. On December 26, 2013, between 5:46 p.m. and 8:12 p.m., Lee solicited “Matt” for a lewd or lascivious battery[7] by offering to teach “Matt” how to perform oral. sex. This solicitation occurred while Lee was in Indiana visiting his family for the holidays.
2. The second solicitation occurred the following night on December 27, 2013, between 11:16 p.m. and 11:49 p.m., as Lee was traveling back to Florida. At that time, Lee solicited “Matt” for lewd or lascivious molestation[8] when he asked to grab “Matt’s” buttock and genital area.
3. Another solicitation for lewd or lascivious battery occurred an hour later when Lee offered to perform oral sex on “Matt.” Lee was still traveling back to Florida at this point as he mentioned stopping to refuel.
4. The solicitations resumed two days later on December 30, 2013, between 8:08 p.m. and 8:57 p.m. when Lee was at home. At that time, Lee solicited “Matt” for another lewd and lascivious battery by describing in detail a fantasy about engaging in sexual conduct at a water park with “Matt,” who would appear to others to be his son.
5. The final solicitation occurred three days later on January 1, 2014 (the day before Lee traveled to meet “Matt”), at 10:22 p.m. when Lee solicited Matt for a lewd or lascivious battery by discussing the performance of oral sex. Lee was at home when this conversation occurred.
Lee solicited the investigator for unlawful sex acts over an eleven-day time span with up to a three-day temporal break between solicitations. Those breaks in time gave Lee ample opportunity to pause and reflect on the legality of his actions. Duke, 444 So.2d at 494; Bass, 380 So.2d at 1183. Lee also changed locations between solicitations. He solicited the investigator while visiting family in Indiana, while returning to Florida, and while he was at home. And finally, the solicitations were distinct in character. Lee solicited the person he thought to be a minor for multiple, distinct acts of lewd or lascivious battery and lewd or lascivious molestation.
Based on the multiple temporal breaks between communications, the multiple lo *358 cations involved, and the different types of unlawful acts Lee solicited, we hold that the record established no fewer than five distinct acts, of solicitation. This evidence of-five distinct solicitations is more than sufficient to support Lee’s three convictions: one solicitation to prove the underlying offense necessary for his conviction for traveling to meet a minor, a second solicitation to prove the underlying offense necessary for his conviction for unlawful use of a two-way communications device, and a third solicitation to prove that he used a computer to solicit' a child. And even if all five of the solicitations had occurred during the same criminal episode, we would still hold these acts to be separately punishable, because the Legislature has expressed its intent to charge and punish each separate act of. solicitation. See § 847.0135(3), Fla. Stat. (2013).
Accordingly, viewing the record in the light most favorable to the jury’s verdict, we conclude that Lee’s convictions for traveling after solicitation, unlawful use of a two-way communications device, and soliciting a minor do not violate double jeopardy because his convictions were based on distinct criminal acts. Based on this conclusion, we need not proceed to step three of the double jeopardy analysis—the same elements test.[9] Our analysis of Lee’s double jeopardy claim ends here.

D. Downward Departure Sentence

The State appeals the trial court’s imposition of the downward departure sentence in this case. The imposition of a downward departure sentence is a two-part process. Childers v. State, 171 So.3d 170, 172 (Fla. 1st DCA 2015). First, the trial court must determine whether there is a legal reason for departure and factual support for that reason. Id. This portion of the trial court’s decision will be sustained on appellate review if the court applied the correct rule of law and if competent, substantial evidence supports its ruling. Id. Second, the trial, court must determine whether departure is the best sentencing option for the defendant by weighing the totality of the circumstances, including aggravating and mitigating factors. Id. We review this portion of the trial court’s decision for an abuse of discretion. Id.
Here, the State argues- that the trial court erred in imposing a downward departure sentence because there was no evidence to support the court’s statutory ground for departure (that -Lee required specialized treatment for a mental disorder that was unrelated to substance abuse or addiction) and because the non-statutory grounds (Lee’s ability to be rehabilitated, his contribution,to the community, his employment history, his family background, and his lack of a criminal history) were not valid reasons for departure. We agree.

i Preservation

Before the merits of this argument may be addressed, we must first determine whether the State properly preserved this argument for review. The supreme court recently held that the State’s objection to a downward departure sentence is properly preserved when the prosecutor objects during the same proceeding in which the defendant is sentenced and states the legal grounds for the objection. State v. Wiley, 210 So.3d 658, 659 (Fla. 2017). Here, the State properly preserved its argument that the trial court erred in imposing a downward departure sentence. At the sentencing hearing, the State argued that Lee was a danger to the commu *359 nity and asked the court to impose a sentence of at least five years’ imprisonment. Further, the State argued in rebuttal to defense counsel’s argument for a departure sentence that none of the mitigating factors presented by the defense warranted a departure. Because the trial court was on notice of the reasons that the State objected to the trial court’s imposition of a departure sentence and the State raises those same arguments on appeal, this issue is preserved for appellate review.

ii Analysis

Lee was convicted of traveling to meet a minor to engage in sexual conduct, which is a second-degree felony punishable by up to fifteen years’ imprisonment. §§ 775.082(3)(d), 847.0185(4)(a), Fla. Stat. (2013). Lee was also convicted of unlawful use of a two-way communications device and using a computer to solicit sexual conduct of a child, which are third-degree felonies punishable by up to five years’ imprisonment. §§ 775.082(3)(e), 847.0135(3)(a), 934.215, Fla. Stat. (2013). Although Lee’s Criminal Punishment Code scoresheet provided for a minimum permissible sentence of forty-five 'months’ imprisonment, the trial court was free to impose up to the statutory maximum on each count and to run the sentences consecutively. §§ 921.00265(1), 921.16(1), Fla. Stat. (2013). Thus, Lee was facing a total of twenty-five years’ imprisonment. Instead, he was sentenced to a total of two years’ community control followed by thirteen years’ probation.
The trial court relied on the statutory mitigating factor that Lee “requires specialized treatment for a mental disorder that is unrelated to substance abuse or addiction, or for a physical disability, and the defendant is amenable to treatment.” § 921.0026(2)(d), Fla. Stat. (2013). The trial court also relied on the following non-statutory mitigating factors: Lee’s ability to be rehabilitated, his contribution to the community, his employment history, his family background, and his lack of criminal history.

a. Statutory Mitigator

Section 921.0026(2)(d) allows for a departure sentence when a defendant proves by a preponderance of the evidence: (1) he has a mental disorder unrelated to substance abuse or addiction or a physical disability; (2) his disorder or disability requires specialized treatment; and (3) he is amenable to treatment. State v. Chubbuck, 141 So.3d 1163, 1171 (Fla. 2014). Although the trial court relied on this factor, Lee never sought mitigation on this basis at the sentencing hearing'or in his sentencing memorandum. Further, the record does not contain sufficient evidence to support departure on this basis. The trial court correctly observed that Lee suffered from depression not related to substance abuse or addiction. But there was no evidence that Lee was suffering from depression at the time he committed his offense or at the time of sentencing, that he needed specialized treatment, or that he was amenable to treatment. Thus, there is no competent, substantial evidence to support a departure based on this factor.

b. Non-Statutory Mitigators

The trial court also departed based on several non-statutory mitigating factors. When .the court bases a departure on -a non-statutory factor, the factor must be permissible and supported by competent, substantial evidence. State v. Bowman, 123 So.3d 107, 109 (Fla. 1st DCA 2013). To be permissible, the non-statutory mitigator must be consistent with legislative sentencing policies. Id “The mitigating factors specifically listed by the legislature focus on the nature of the crime, the conduct of .the defendant or the mental *360 capacity, condition, or attitude of the defendant. Further, the first purpose of sentencing is to punish, not rehabilitate. Finally, the legislative sentencing policy is to ensure that violent criminals are incarcerated.” State v. Chestnut, 718 So.2d 312, 313 (Fla. 5th DCA 1998).
None of the non-statutory mitigating factors relied on by the trial court were legally permissible to sustain a departure sentence. Initially, the trial court pointed to Lee’s potential for rehabilitation as a reason for imposing a lesser sentence. However, amenability to rehabilitation has been rejected as a valid reason for a departure. Id. at 313. Next, the court relied on Lee’s employment history and contribution to the community as a physician as mitigating factors. But the fact that Lee is employed as a family practitioner who is highly valued by his patients is not a sufficient reason to depart from the Criminal Punishment Code. As the Fourth District observed: “All defendants suffer the consequences of a criminal conviction. The sentencing guidelines do not provide special treatment for the trained, educated or licensed. To achieve equality in sentencing, trial judges must be blind as to the color of a defendant’s collar.” State v. Lacey, 553 So.2d 778, 780 (Fla. 4th DCA 1989).
The trial court also noted that Lee had the support of his family when it decided to impose a departure sentence. However, the fact that a defendant has strong family support has been rejected as a valid reason for a departure. Chestnut, 718 So.2d at 314 (“[W]e do not believe that the legislature intended that a defendant from an exemplary family should be excused from serving the sentence recommended for his offense.”). Finally, the court relied on Lee’s lack of criminal history. This is not a valid reason for departing because a defendant’s criminal history is considered when calculating his minimum permissible sentence. See State v. Chapman, 805 So.2d 906, 908 (Fla. 2d DCA 2001); State v. Scaife, 676 So.2d 1035, 1036 (Fla. 5th DCA 1996). Thus, none of the non-statutory mitigators were permissible considerations in accordance with legislative sentencing policies. As neither the statutory mitigator nor the non-statutory mitigators supported a downward departure, the trial court erred in sentencing Lee.

III. Conclusion

Because, viewed in the light most favorable to the jury verdict, the record demonstrates that Lee’s convictions for traveling after solicitation, unlawful use of a two-way communications device, and solicitation occurred during separate criminal episodes and involved distinct acts of solicitation, Lee’s convictions do not violate double jeopardy. We, therefore, affirm Lee’s convictions. However, because the trial court erred in imposing a downward departure sentence, we vacate Lee’s sentences and remand for resentencing. On remand, the trial court may again consider imposing a departure sentence if there are valid legal grounds to support the departure sentence, and those legal grounds are supported by competent, substantial evidence. Jackson v. State, 64 So.3d 90 (Fla. 2011).
AFFIRMED in part, REVERSED in part, and REMANDED.
ROBERTS, C.J., WOLF, LEWIS, B.L. THOMAS, WETHERELL, RAY, OSTERHAUS, KELSEY, WINOKUR, JAY, WINSOR, and M.K. THOMAS, JJ., concur.
WINOKUR, J., concurs in an opinion in which B.L. THOMAS and OSTERHAUS, JJ., join.
*361 BILBREY, J., concurs in part and dissents in part in an opinion in which MAKAR, J., joins.
MAKAR, J., concurs in part and dissents in part with opinion.

. These appeals were consolidated for all purposes, and the State’s appeal was treated as a cross-appeal.

. But see Griffith v. State, 208 So.3d 1208 (Fla. 5th DCA 2017) (affirming appellant’s convictions after concluding that the record did not demonstrate that the convictions for traveling and solicitation were based on the same conduct).

. We acknowledge that some of the language in our Partch decision has been construed to limit the distinct acts analysis to consideration of the charging information and the jury verdict and to implicitly shift the burden to the State to prove that an error did not occur. For example, the Fifth District relied on Partch to support its conclusion that: "Neither the charging information nor the jury verdict form included language clearly predicating the disputed charges on two distinct acts. As a result, the State charged the offenses as occurring during a single criminal episode, and we may not assume that they were predicated on distinct acts.” Holt v. State, 173 So.3d 1079, 1081 (Fla. 5th DCA 2015). Recognizing that Partch has been construed in this unintended manner, we now hold and clarify that a reviewing court must examine the entire record before reaching a conclusion about whether multiple convictions are based on distinct criminal acts. And the burden is on the appellant to demonstrate that the record could not support multiple convictions.

. The trial court went over the jury instructions line-by-line with both parties. Defense counsel agreed to the standard jury instructions and did not request any special instructions. See Jaimes v. State, 51 So.3d 445, 448 (Fla. 2010) (holding that jury instructions are subject to the contemporaneous objection rule). Further, defense counsel agreed to the verdict form proposed by the court. See Morris v. State, 658 So.2d 155, 156 (Fla. 1st DCA 1995) (holding that a contemporaneous objection -is required to preserve an argument about an error in a verdict form).

. Florida Rule of Criminal Procedure 3.140(n) permits a defendant to file a motion for a statement of particulars if the defendant believes that the information is insufficient to allow preparation of a proper defense. Lee did .not file such a motion.

. The distinct acts of solicitation and the times they occurred will be more fully described in the following section.

. Lewd or lascivious battery is defined as "engaging in sexual activity with a person 12 years of age or older but less than 16 years of age.” § 800.04(4)(a)l., Fla Stat. (2013). For the purposes of this statute, sexual activity is defined as "the oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object; however, sexual activity does not include an act done for a bona fide medical purpose." § 800.04(l)(a), Fla. Stat. (2013).

. Lewd or lascivious molestation occurs when: "A person who intentionally touches in a lewd or lascivious manner the breasts, genitals, genital area, or buttocks, or the clothing covering them, of a person less than 16 years of age, or forces or entices a person under 16 years of age to so touch the perpetrator .... ” § 800.04(5)(a), Fla. Stat. (2013).

. Had Lee's convictions been based on a single act of solicitation occurring during a single criminal episode, then the decision in Shelley would have required reversal of his solicitation conviction.