DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

ARMANDO RUBEN DOMINGUEZ,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D2023-1818

_____

February 18, 2026

Appeal from the Circuit Court for Hillsborough County; Lyann Goudie,
Judge.

Blair Allen, Public Defender, and Tim Bower Rodriguez, Special Assistant
Public Defender, Bartow, for Appellant.

James Uthmeier, Attorney General, Tallahassee, and Helene S. Parnes,
Senior Assistant Attorney General, Tampa, for Appellee.

SILBERMAN, Judge.

Armando Ruben Dominguez appeals his convictions and sentences
for three counts of sexual battery on a person older than twelve but less
than eighteen years old, two counts of lewd or lascivious battery on a
person older than twelve but less than sixteen years old, one count of
unlawful sexual activity with a minor, and one count of unlawful use of a

two-way communications device.  He argues on appeal that his convictions for two of the sexual battery counts (counts I and III) and his convictions for the two lewd or lascivious battery counts (counts IV and V) violate the constitutional prohibition against double jeopardy.  We conclude that Mr. Dominguez's convictions and sentences for the sexual battery offenses do not violate double jeopardy principles and affirm counts I and III.  However, because his convictions and sentences for the two counts of lewd or lascivious battery do violate the prohibition against double jeopardy, we reverse his conviction and sentence on count V.

## I.  PROCEDURAL BACKGROUND

In an amended information, counts I and III alleged that between July 17, 2016, and December 31, 2020, Mr. Dominguez violated section 794.011(5)(a), Florida Statutes (2016), by committing sexual battery on the victim, and both counts alleged different acts of sexual battery. Counts IV and V alleged that between July 17, 2016, and December 31, 2020, Mr. Dominguez violated section 800.04(4)(a)1, (b), Florida Statutes (2016), by committing lewd or lascivious battery by engaging "in sexual activity with" the victim on one or more occasions.  The language in counts IV and V is identical.

Before the amended information was filed, Mr. Dominguez filed a motion for statement of particulars in which he sought specificity from the State as to which acts were being charged and the dates and places in which the acts allegedly occurred.  He explained, among other things, the difficulties in defending himself against the charges, the prejudice he would suffer, the potential for his being "placed in jeopardy multiple times for the same offense," and the ability the State would have to "select any of the acts alleged by the victim as the act charged in the respective counts of the Information [that] would allow the State to

2

'substitute' other alleged similar acts as those alleged in the Information."

> Following a hearing, the trial court directed the State to

> "prepare a statement of particulars and/or an amended information to include as much detail as possible and to narrow the dates of the sexual acts alleged in counts one through five to more accurately reflect the testimony of the victim and [be] consistent with the allegations set forth in the 'State's Notice of Intent to Rely on Williams Rule Evidence.' "

Our record does not reflect that the State filed a statement of particulars though it did file an amended information. As to counts IV and V, the amended information changed the date range, but it alleged the identical period of July 17, 2016, to December 31, 2020, for each count. The State otherwise failed to provide additional specificity as to the sexual acts alleged.

## II.  DISCUSSION

Double jeopardy "prohibits subjecting a person to multiple prosecutions, convictions, and punishments for the same criminal offense." *Valdes v. State*, 3 So. 3d 1067, 1069 (Fla. 2009). Double jeopardy clauses are contained in both the United States and Florida Constitutions. Amend. V, U.S. Const. ("[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ."); art. I, § 9, Fla. Const. ("No person shall . . . be twice put in jeopardy for the same offense . . . ."). "This protection applies both to successive punishments and to successive prosecutions for the same criminal offense." *United States v. Dixon*, 509 U.S. 688, 696 (1993); *see also Valdes*, 3 So. 3d at 1069 ("The most familiar concept of the term 'double jeopardy' is that the Constitution prohibits subjecting a person to

multiple prosecutions, convictions, and punishments for the same criminal offense.").[1]

Double jeopardy protection applies when two offenses are "the same in law and in fact." *Trappman v. State*, 384 So. 3d 742, 747 (Fla. 2024) (emphasis omitted) (quoting *Burton v. United States*, 202 U.S. 344, 380 (1906)). Mr. Dominguez's charges in counts I and III are undoubtedly the same in law because both counts charge him with violating section 794.011(5)(a). The same is also true for counts IV and V because both counts charge him with violating section 800.04(4)(a)1, (b). Thus, the question is whether the offenses are the same factually.

When deciding whether offenses are the same in fact, courts must determine whether the two convictions are based on distinct acts that permit separate punishments under the statute. *Graham v. State*, 207 So. 3d 135, 139 (Fla. 2016). This "distinct acts" test is used "where the defendant is convicted multiple times under the same statute for acts that occurred during the course of a single criminal episode." *Id.* at 141.

To determine whether multiple convictions "are based upon the same conduct for purposes of double jeopardy, the reviewing court should consider only the charging document." *Lee v. State*, 258 So. 3d 1297, 1299 (Fla. 2018). In *Lee*, the Florida Supreme Court recognized that it had previously "rejected the argument that a reviewing court could save an otherwise nonspecific charging document by conducting its own examination of the evidentiary record to sustain the convictions." *Id.* at 1303 (citing *State v. Shelley*, 176 So. 3d 914 (Fla. 2015)). The court held

---

[1] Though Mr. Dominguez did not preserve these arguments below, the double jeopardy violations he argues on appeal would "constitute[] fundamental error that may be raised for the first time on appeal." *Kania v. State*, 243 So. 3d 1032, 1033 (Fla. 2d DCA 2018).

that "[a] reviewing court's ability to find evidence in the record to support multiple convictions is insufficient to defeat a double jeopardy claim when nothing in the charging document suggests that the convictions were based on separate conduct." *Id.* at 1303-04. Indeed, "the issue 'is not one of *evidentiary sufficiency*' but of '*constitutional sufficiency*.' " *Id.* at 1304 (quoting *Lee v. State*, 223 So. 3d 342, 374 (Fla. 1st DCA 2017) (Makar, J., concurring in part, dissenting in part)).

This court has consistently followed our supreme court's opinion in *Lee*. In *Morejon-Medina v. State*, 277 So. 3d 1118, 1119 (Fla. 2d DCA 2019), the defendant was charged

> with using a computer to solicit a child to commit a sex act (solicitation) "on or between February 12, 2013[,] and February 14, 2013," in violation of section 847.0135(3)(a), Florida Statutes (2012), and traveling after soliciting a child to commit a sex act (traveling after solicitation) "on or about February 15, 2013," in violation of section 847.0135(4)(a).

While the wording of the charging document was different for each count and asserted different dates and statutory subsections, this court reversed the solicitation charge based on *Lee* "because the information itself does not make clear that the solicitation charge is separate and distinct from the solicitation underlying the travel charge." *Id.* at 1122. This court noted that

> [a]lthough the information supports an interpretation that the State relied on separate acts of solicitation, it does not foreclose the possibility that the State relied on the same act of solicitation. And, bound by *Lee*, we must not consider that the evidence adduced at trial supported separate acts of solicitation for each charge.

*Id.*

Again in *Powers v. State*, 289 So. 3d 565, 566 (Fla. 2d DCA 2020), this court recognized that "[i]n determining whether multiple convictions based on the same conduct constitute a violation of double jeopardy, an

5

appellate court may consider only the charging document, not the entire record." *Id.* (first citing *Lee*, 258 So. 3d at 1303-04; and then citing *Morejon-Medina*, 277 So. 3d at 1121).  In *Powers*, the defendant was found guilty "of four counts of exploiting his elderly parents in violation of section 825.103, Florida Statutes (2016)." *Id.* at 565.  Counts one and two charged Powers under two different subsections of section 825.103, and counts three and four were "charged similarly and relate[d] to the conveyance of the same real property." *Id.* at 566.  This court held that "[b]ecause the information does not reflect that count one is based on conduct separate and distinct from count two, convictions for both offenses violate double jeopardy" and that counts three and four also "do not constitute separate crimes and violate double jeopardy. *Id.*; *see also Schwoerer v. State*, 313 So. 3d 809, 812 (Fla. 2d DCA 2021) (noting that appellate courts can look only to the charging document in examining a double jeopardy claim and that any attempt to guess at "the possible factual bases for the court's verdicts would require us to work backward from our own sufficiency-of-the-evidence-type review—the precise review that *Lee* expressly disapproved"); *Neu v. State*, 50 Fla. L. Weekly D1997, D1997-98 (Fla. 6th DCA Sept. 5, 2025) ("Because the information did not make clear that the State relied on separate solicitation conduct to charge each offense, punishing Neu for both violates double jeopardy.").

### 1. *Mr. Dominguez's sexual battery convictions on counts I and III do not violate double jeopardy because the State described separate acts in each count of the information.*

Count I of the amended information alleged that Mr. Dominguez used his penis to sexually batter the victim while count III alleged that he used his mouth to sexually batter the victim.  Because the facts alleged in the information reflect that the charges were based on distinct acts, there is no double jeopardy concern.  *Cf. State v. Meshell*, 2 So. 3d 132,

6

135 (Fla. 2009) ("[S]exual acts of a separate character and type requiring different elements of proof, such as those proscribed in the sexual battery statute, are distinct criminal acts."); *Duke v. State*, 444 So. 2d 492, 494 (Fla. 2d DCA 1984) ("Clearly, penetration of the vagina and penetration of the anus are distinct acts necessary to complete each sexual battery.").  Because there is no double jeopardy violation pertaining to counts I and III, we affirm Mr. Dominguez's convictions and sentences for those offenses.

## 2. *Mr. Dominguez's lewd or lascivious battery convictions on counts IV and V violate double jeopardy principals because the State described the same act in each count of the information.*

Counts IV and V charged Mr. Dominguez with engaging in lewd or lascivious battery against the victim on one or more occasions between July 17, 2016, and December 31, 2020, and the wording in both counts is identical.  Nothing in the charging document suggests that the convictions on counts IV and V were based on separate conduct.  Similar to *Lee*, not only did the information fail to allege distinct acts, the jury instructions and verdict form for counts IV and V were also identical. *Lee*, 258 So. 3d at 1304.

It is noteworthy that in *Powers*, *Morejon-Medina*, and *Schwoerer*, reversal was required on double jeopardy grounds even though the information in each case charged violations of different statutory subsections, and in *Morejon-Medina*, the information alleged different crimes and different time periods.  Here, counts IV and V charged Mr. Dominguez with committing the same crime against the same victim during the same time frame.  The State's use of identical language for both counts is even more problematic than the charging documents in *Powers*, *Morejon-Medina*, and *Schwoerer*.

7

A problem arose at trial due to the use of identical language for counts IV and V in the jury instructions and the verdict form. During deliberations, the jury submitted the following question to the judge: "What are the differences between Count 4 + 5? Same wording, what is the difference?" In response, the judge directed the jurors to rely on the evidence they heard during trial and the instructions given to them. After the jury found Mr. Dominguez guilty on both counts, he was sentenced to consecutive terms of fifteen years in prison for both.

We do not agree with the dissent that *Trappman*, 384 So. 3d 742, supports affirmance of counts IV and V. First, in *Trappman*, the Florida Supreme Court did not recede from the rule announced in *Lee*. Over two decades ago, the court wrote the following in *Puryear v. State*, 810 So. 2d 901, 905 (Fla. 2002):

> We take this opportunity to expressly state that this Court does not intentionally overrule itself sub silentio. Where a court encounters an express holding from this Court on a specific issue and a subsequent contrary dicta statement on the same specific issue, the court is to apply our express holding in the former decision until such time as this Court recedes from the express holding.

*See also F.B. v. State*, 852 So. 2d 226, 228-29 (Fla. 2003) (quoting *Puryear*, 810 So. 2d at 905). Further, the supreme court expressly declined to recede from *Lee* in *Dettle v. State*, 395 So. 3d 1054, 1061 (Fla. 2024), which was decided after *Trappman*.

Second, the dissent's reliance on *Trappman* to conclude that *Lee* does not apply to this case is simply not supported by the *Trappman* opinion. In that case, Mr. Trappman shoved an officer, and when the officer shoved him back, Mr. Trappman "responded by siccing a pit bull on the officer." 384 So. 3d at 745. For the shove, Mr. Trappman was convicted of battery of a law enforcement officer. *Id.* For inciting the dog

8

to attack the officer resulting in injury to the officer, he was convicted of aggravated battery of a law enforcement officer. *Id.* The question in *Trappman* was whether Mr. Trappman's conduct constituted one criminal act or two successive criminal acts of battery of a law enforcement officer. *Id.* at 751. The supreme court concluded that there was no double jeopardy violation under *Blockburger,*[2] and while the court discussed the facts leading to Mr. Trappman's convictions, it did so in the context of analyzing the "distinct acts test" of *Blockburger*. *Id.* at 750, 754-56. Unlike here, in *Trappman* "distinct acts were alleged in the information thereby avoiding any additional double jeopardy concern." *Trappman v. State*, 325 So. 3d 944, 947 (Fla. 1st DCA 2021) (Bilbrey, J., concurring). Further, Mr. Trappman never argued that there were alleged deficiencies in the charging document in his appeal to the First District or in his brief to the Florida Supreme Court. *Trappman*, 384 So. 3d at 751 n.4.

Finally, we disagree with the dissent that *Lee* does not apply to a double jeopardy analysis when a defendant is charged multiple times with committing the same act in violation of the same statute during the same time frame, a quintessential double jeopardy situation. In *Lee*, the supreme court noted that it was impossible to know whether the jury had convicted the defendant of three offenses based on the same act because "[f]or all we know, jury deliberations ended when they found a [single] solicitation violation." *Lee*, 258 So. 3d at 1304 (citing 223 So. 3d at 373 (Makar, J., concurring in part, dissenting in part)); *see also Schwoerer*, 313 So. 3d at 812 (recognizing that when there is a general verdict on each count, "the reviewing court 'cannot infiltrate the black box of jury deliberation' to ascertain whether the jury found distinct

---

[2] *Blockburger v. United States*, 284 U.S. 299 (1932).

factual bases for its verdicts on each count").  Here, that concern is even more evident where the jury specifically asked the trial court, "What are the differences between Count 4 + 5?  Same wording, what is the difference?"

In a case not addressed by the parties, *Pena-Vazquez v. State*, 278 So. 3d 755 (Fla. 3d DCA 2019), the court came to a different conclusion than we do here.  We are not persuaded by the court's effort to distinguish the supreme court's opinion in *Lee* to reject the double jeopardy claim raised there.  To reach its conclusion, the *Pena-Vazquez* court did precisely what *Lee* prohibits:  it reviewed the evidence to determine that "the jury had no apparent difficulty in differentiating among the counts."  *Id.* at 761.  In contrast, the jury question here clearly shows that it was having difficulty differentiating counts IV and V.  And any review of the evidence, which would be contrary to the dictates of *Lee*, does not let us see into the minds of the jurors to ascertain how they reached their verdict, particularly in light of the identical language used in the information, the instructions, and the jury verdict form as to counts IV and V.  As a result, we certify conflict with *Pena-Vazquez* to the extent that it holds that *Lee* does not apply where a defendant is convicted of committing the same act upon the same victim during the same time period in violation of the same criminal statute.

Accordingly, we reverse Mr. Dominguez's conviction and sentence for the offense of lewd or lascivious battery in count V.  Mr. Dominguez's remaining convictions and sentences are affirmed.

Affirmed in part; reversed in part; conflict certified.


MORRIS, J., Concurs.
ATKINSON, J., Concurs in result in part, dissents in part, with opinion.

10

ATKINSON, Judge, concurring in part and dissenting in part.

I concur in the majority's decision to affirm on counts I and III. I respectfully dissent from the majority regarding counts IV and V. Because both the charging document and evidence in the record indicate that the convictions were premised upon acts that occurred separately, I would affirm the judgment and sentences as to those counts.

At issue in this case is the protection under the double jeopardy clauses in the United States and Florida constitutions "against multiple punishments for the same offense." *Trappman v. State*, 384 So. 3d 742, 747 (Fla. 2024) (quoting *Justs. of Bos. Mun. Ct. v. Lydon*, 466 U.S. 294, 306–07 (1984)); *see also* amend. V, U.S. Const ("[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ."); Art. I, § 9, Fla. Const. ("No person shall . . . be twice put in jeopardy for the same offense . . . ."). "A defendant is placed in double jeopardy where based upon the same conduct the defendant is convicted of two offenses, each of which does not require proof of a different element." *Pizzo v. State*, 945 So. 2d 1203, 1206 (Fla. 2006) (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). "[M]ost succinctly put, the offenses must be 'the same *in law* and *in fact*.' " *Trappman*, 384 So. 3d at 747 (quoting *Burton v. United States*, 202 U.S. 344, 380 (1906)).

The question of whether offenses are the same "in fact" "addresses whether conduct transgressing a single prohibition is subject to multiple punishments" while the question of whether offenses are the same "in law" addresses "whether a single act transgressing more than one prohibition may be punished separately." *Id.* As to the former, "multiple punishments for violations of a single criminal prohibition are permissible if the prohibition is aimed at singular acts—as opposed to a

11

continuous offense or course of criminal conduct—and the defendant's conduct involves separate acts stemming from 'successive impulses.' " *Id.* (citing *Blockburger*, 284 U.S. at 302). And as to the latter, "multiple punishments for a single act that violates separate criminal prohibitions are permissible if the separate prohibitions each require proof of a fact not required to establish a violation of the other prohibition." *Id.* (citing *Blockburger*, 284 U.S. at 304). In short, precedent provides courts with "two tests to apply," depending on whether the defendant was "convicted multiple times under the same statute for acts that occurred during the course of a single criminal episode"—in which the " 'distinct acts' test is used"—or whether the defendant was "convicted under multiple statutes for one act"—in which the " 'different elements' test applies." *Id.* at 748 (quoting *Graham v. State*, 207 So. 3d 135, 141 (Fla. 2016)).[3]

Because Mr. Dominguez was convicted twice for the same criminal prohibition under the same criminal statute—twice for lewd or lascivious battery under section 800.04(4)(a)1, Florida Statutes (2016)—the double jeopardy question in this case implicates the "distinct acts" test. Under that test, "[a]cts are distinct when they result from 'successive impulses' even when the character of the acts is the same." *Trappman*, 384 So. 3d at 754.

---

[3] If a defendant is convicted multiple times of the same prohibition under the same statute, it is manifestly obvious that the offenses are the same "in law," as the same elements are at issue for each charge. Thus, the "distinct acts" test is the applicable standard in that situation to determine whether the offenses were the same "in fact." And if a defendant is convicted under multiple statutes for one act, it is likewise obvious that the offenses are the same "in fact." Thus, the "different elements" test is the applicable standard in that situation to determine whether the offenses were the same "in law."

In counts IV and V, the State asserted two identical charges, each of which allege violations "on one or more occasions" of the same criminal prohibition during exactly the same time period.[4] In both written and oral jury instructions, the trial court provided the jury with the following admonition: "A separate crime is charged in each count of the information, and although they have been tried together, each crime and the evidence applicable to it must be considered separately and a separate verdict returned as to each."

Mr. Dominguez does not dispute that the evidence at trial supported the State's theory that the offense in each count was premised upon a separate act. However, that cannot end this court's inquiry. Florida Supreme Court precedent indicates that at least under some circumstances, it does not matter whether evidence at trial supports the conclusion that the defendant committed distinct acts. *See Lee v. State*, 258 So. 3d 1297, 1303–04 (Fla. 2018) ("A reviewing court's ability to find evidence in the record to support multiple convictions is insufficient to defeat a double jeopardy claim when nothing in the charging document suggests that the convictions were based on separate conduct."). Instead, under such circumstances, a reviewing court must confine its analysis to the charging document. *See id.* On the other hand, more recent Florida Supreme Court case law indicates that under some circumstances, it is necessary for a reviewing court to examine the evidentiary record to determine whether multiple convictions are

---

[4] Counts IV and V each allege in full as follows:

ARMANDO RUBEN DOMINGUEZ, between the 17th day of July, 2016, and the 31st day of December, 2020, inclusive, on one or more occasions, in the County of Hillsborough and State of Florida, did engage in sexual activity with N.E.H., a person 12 years of age or older, but less than 16 years of age.

premised upon the same conduct or distinct acts for the purpose of determining whether a double jeopardy violation has occurred. *See Trappman*, 384 So. 3d at 745–46 (explaining that its analysis of the double jeopardy issue would include a "review [of] the facts of the incident that resulted in the charges against Trappman," an "examin[ation of] double jeopardy principles," and an "analy[sis of] Trappman's conduct" before "concluding that separate impulses resulting in distinct criminal acts justif[ied] Trappman's dual convictions and sentences"). The question in this case, then, is whether a double jeopardy analysis of Mr. Dominguez's dual lewd or lascivious battery convictions should be confined to a review of the charging document or whether it should include consideration of the evidentiary record.

The Florida Supreme Court's opinion in *Lee* could arguably be perceived as applicable to Mr. Dominguez's identical lewd and lascivious battery charges and mandate that our review for a potential double jeopardy violation should be confined to the charging document. The charging document in this case poses an ostensibly similar impediment to a reviewing court's attempt to determine whether the State alleged separate conduct in each of the two identical counts—that "[c]onsidering only the information, it is impossible to know whether the jury convicted [Mr. Dominguez] . . . based on the same act of [lewd or lascivious battery]." *Lee*, 258 So. 3d at 1304. Neither count in the information in this case includes any specific factual detail that definitively distinguishes the conduct in count IV from that in count V, both of which allege a violation of the same criminal statute during the same time period. However, the similarities between the information in this case and the information reviewed in *Lee* end there. Crucial distinctions between this case and *Lee*, as well as similarities to the circumstances of

14

*Trappman*—in which the Florida Supreme Court examined the evidentiary record to determine whether the charges were premised on separate conduct—compel the conclusion that the double jeopardy issue in this case is not governed by *Lee* and that our review therefore need not be confined to the charging document but rather should take into consideration the evidentiary record.

In *Lee*, the defendant was convicted of three different criminal offenses: solicitation of a minor, unlawful use of a two-way communications device, and traveling after solicitation. *Id.* at 1300. The supreme court described the issue as whether, under those circumstances, "the reviewing court should consider only the charging document or the entire evidentiary record" to "determine whether multiple convictions are based upon the same conduct." *Id.* at 1299. The supreme court relied on its prior decision in *Shelley* in which it had concluded that the offenses of solicitation and traveling after solicitation failed the "different elements" test for purposes of a double jeopardy analysis. *See id.* at 1302–03; *see also State v. Shelley*, 176 So. 3d 914, 919 (Fla. 2015) ("[B]ecause the statutory elements of solicitation are entirely subsumed by the statutory elements of traveling after solicitation, the offenses are the same for purposes of the *Blockburger* same-elements test codified in section 775.021(4), Florida Statutes."). But the supreme court in *Lee* observed that the information "d[id] not make clear that the State relied on separate conduct to charge the offenses." *Lee*, 258 So. 3d at 1304. Characterizing that issue as one of "*constitutional sufficiency*" as opposed to "*evidentiary sufficiency*," *id.* (quoting *Lee v. State*, 223 So. 3d 342, 375 (Fla. 1st DCA 2017) (Makar, J., concurring in part, dissenting in part)), the supreme court reasoned that "[a] reviewing court's ability to find evidence in the record to support

15

multiple convictions is insufficient to defeat a double jeopardy claim when nothing in the charging document suggest[ed] that the convictions were based on separate conduct," *id.* at 1303–04. Because the lack of specificity in the charging document rendered it "impossible to know whether the jury convicted Lee of all three offenses based on the same act of solicitation," the supreme court concluded that a double jeopardy violation had occurred. *Id.* at 1304.

Subsequently, in *Trappman*, the supreme court considered whether the defendant's conduct "constituted one criminal act of battery of a law enforcement officer, subject to only one punishment, or two successive criminal acts of battery of a law enforcement officer (the latter of which was in an aggravated form) subject to two punishments." *See Trappman*, 384 So. 3d. at 751. In that case, it was likewise undisputed that the defendant's offenses were functionally the same for purposes of double jeopardy because the elements of the lesser form of battery were subsumed with the elements of the greater, aggravated form of battery. *See id.* at 750–51; *see also* § 775.021(4)(b)3 (disallowing separate convictions and sentences for the same conduct when the statutory elements of the lesser offense "are subsumed by the greater offense"). The issue in that case was whether the defendant could be convicted multiple times for the same criminal offense for acts occurring during the same criminal episode—as opposed to being convicted for conduct occurring in the same episode that violated different criminal prohibitions. *See Trappman*, 384 So. 3d at 754–55. To answer that question, the supreme court employed the "distinct acts" test, and it manifestly examined the evidentiary record in doing so. *See id.* at 746, 754 (recounting how the victim and other officers "testified" "[a]t trial" and concluding that the defendant's "conduct involved successive

impulses to commit a battery"). Based on that evidentiary review, the court concluded that the defendant's dual convictions for battery did not constitute a double jeopardy violation because they were predicated on distinct acts. *See id.* at 754–56.

The Florida Supreme Court's *Trappman* opinion confirms that in its prior *Lee* decision, the Florida Supreme Court did not establish a categorical rule that in all instances in which a court must "determine whether multiple convictions are based on the same conduct," the court must confine its analysis to the charging document and ignore the evidentiary record. *See Lee*, 258 So. 3d at 1299. The two cases can be reconciled by observation of a salient difference in circumstances. In *Lee*, the court noted that it was impossible to determine from the information whether "the State relied on separate conduct to charge the offenses" in each of the multiple counts, *see id.* at 1304, whereas in *Trappman* it was clear that the State's theory was that the defendant "separately committed" offenses premised on "distinct acts," *see Trappman*, 384 So. 3d at 746 (quoting *Trappman v. State*, 325 So. 3d 944, 945–46 (Fla. 1st DCA 2021)); *see also Trappman*, 325 So. 3d at 947 (Bilbrey, J., concurring) (noting that "the distinct acts were alleged in the information thereby avoiding any additional double jeopardy concern"). From this observation, it can be deduced that the rule confining a reviewing court's double jeopardy analysis to the charging document was applicable in *Lee* because "nothing in the charging document suggest[ed] that the convictions were based on separate conduct," *Lee*, 258 So. 3d at 1303–04, but the rule was inapplicable in *Trappman* because the charging document indicated that each count was premised on different conduct, *see Trappman*, 384 So. 3d at 746. When confronted with a charging document that did "not make clear that the State relied on

17

separate conduct to charge the offenses," the court in *Lee* held that "the reviewing court should consider only the charging document—not the entire evidentiary record." *Lee*, 258 So. 3d at 1304. *Lee* eschewed as "insufficient" a "reviewing court's ability to find evidence in the record to support multiple convictions . . . to defeat a double jeopardy claim when nothing in the charging document suggests that the convictions were based on separate conduct." *Id.* at 1303–04. Thus, the proscription in *Lee*, it seems, was not generally applicable. Instead, it narrowly applied to prohibit review of the evidentiary record when such review would constitute a post hoc justification of a charging document that would otherwise violate the double jeopardy clause due to its failure to indicate that the offending counts were based on separate conduct.

In other words, the Florida Supreme Court in *Lee* did not speak to a scenario in which a charging document makes it sufficiently clear that separate acts have been alleged to support multiple convictions, thus rendering a reviewing court's examination of the evidentiary record an appropriate means of determining whether the separate convictions were supported by evidence of distinct acts. The charging document in this case meets such a description; like the charging document in *Trappman*, the information filed against Mr. Dominguez did not suffer from the same deficiency identified in *Lee*. In *Lee*, the information alleged one violation of each of three different criminal prohibitions during the same time period, with each violation in a single, separate count. *See id.* at 1300 (providing that Mr. Lee was charged with "one count" of each of the three offenses). This was also true of the conflict cases that *Lee* examined, which likewise involved charging documents that alleged the defendant violated multiple criminal statutes during the same time period, asserting one count for each violation. *See id.* at 1303; *Mizner v. State*,

18

154 So. 3d 391, 395 (Fla. 2d DCA 2014); *Holt v. State*, 173 So. 3d 1079, 1081 (Fla. 5th DCA 2015). In this case, by contrast, the information alleged multiple counts of the same offense—that is, each of the two counts alleged "one or more" violations of the same criminal prohibition under the same statute—during the same time period. In the scenario examined by *Lee*, it is not possible from the charging document to determine whether the State's theory relies on separate conduct to support each of the multiple crimes charged. *See Lee*, 258 So. 3d at 1304. In comparison, the charging document in this case can only be reasonably read as alleging separate conduct to support each of the two commissions of the same crime. Reading the charging document otherwise would require an unreasonable presumption either that the State duplicated a count by mistake or that the information is a nonsensical absurdity.

In a similar case, the Third District rejected an argument that a charging document was "fundamentally defective where it alleged two counts of violating the same statute, using identical language and relying upon a two-year range of dates for the commission of both offenses." *Cf. Pena-Vazquez v. State*, 278 So. 3d 755, 758 (Fla. 3d DCA 2019). While "use[] [of] identical language in" two separate counts "may not represent a best practice, this alone does not render the counts defective or the convictions improper." *Id.* ("Reduced to its essence, this aspect of Pena-Vazquez's claim is the bare assertion that the Amended Information is defective because it failed to allege a specific date for the criminal act alleged in each count, and instead alleged a range of dates.").

> To the extent Pena-Vazquez asserts the jury may have improperly relied upon proof of one act to find him guilty of two counts of lewd or lascivious molestation, we hold that this is a question of "evidentiary sufficiency" rather than

"constitutional sufficiency," and may therefore be resolved by reviewing the trial record rather than limiting our review to the charging document. In this respect, the instant case is distinguishable from the Florida Supreme Court's recent decisions in *Lee v. State*, 258 So. 3d 1297 (Fla. 2018), and *State v. Shelley*, 176 So. 3d 914 (Fla. 2015).

In *Shelley*, 176 So. 3d at 919, the question presented was whether "dual convictions for solicitation and traveling after solicitation based upon the same conduct" violated double jeopardy. . . .

In *Lee*, 258 So. 3d at 1304, the Florida Supreme Court elaborated on the proper scope of review to be undertaken by an appellate court in analyzing the type of double jeopardy claim presented in *Shelley*, 176 So. 3d at 919. In applying the Blockburger "same elements" test to determine the permissibility of multiple convictions for separate crimes based upon the same conduct, the Court held "the reviewing court should consider only the charging document—not the entire evidentiary record." *Lee*, 258 So. 3d at 1304.

Here, by contrast, Pena-Vazquez was not charged with or convicted of violating two separate criminal statutes (one of which is subsumed within the other) based upon the same conduct. Instead, Counts Two and Six allege that Pena-Vazquez, over the course of the same two-year period, engaged in acts upon the same victim that violated the exact same criminal statute.

At no time did the State allege or contend that Pena-Vazquez committed these two offenses by engaging in a single act.

*Id.* at 760–61 (footnotes omitted) (quoting *State v. Shelley*, 176 So. 3d 914, 919 (Fla. 2015) and *Lee v. State*, 258 So. 3d 1297, 1304 (Fla. 2018)).[5]

---

[5] A distinction between this case and *Pena-Vazquez* is that in this case Dominguez moved to dismiss the information and for a statement of particulars, whereas in *Pena-Vazquez* the defendant failed to do so. *See Pena-Vazquez*, 278 So. 3d at 760. However, that distinction is not pertinent. Despite Dominguez's motions filed in the trial court, on appeal he waived the issue of a defective charging document—one that is distinct from a double jeopardy claim, the latter of which can be raised at

In other words, *Lee* is distinct because the charging document itself posed the possibility that in that case the State charged the defendants with committing the offenses based on the *same conduct*. It could not be ascertained from the face of the information whether the State charged the defendant with violating the various criminal statutes based on the same conduct or if each count was premised on conduct distinct from the other counts. If the State's theory was the former, then the double jeopardy clause would prohibit the multiple convictions because the offenses had already been determined to violate the "different elements" test for purposes of a double jeopardy analysis. *See Trappman*, 384 So. 3d at 747 ("[M]ultiple punishments for a single act that violates separate criminal prohibitions are permissible [only] if the separate prohibitions each require proof of a fact not required to establish a violation of the other prohibition."). And it would be eminently reasonable to infer a possibility that the acts upon which each count was based were *not* distinct in *Lee* because they were alleged to have been committed during the same time period and constituted a violation of all three offenses. It was in that context that the supreme court concluded that the determination of whether multiple convictions *for violations of distinct*

---

any time regardless of preservation and is not subject to waiver. *Cf. id.* ("By failing to seek a statement of particulars to factually differentiate between the identically-worded counts, or otherwise narrow the timeframe for each count, and by failing to *otherwise* challenge the allegedly defective or insufficient nature of the charging document, Pena-Vazquez has waived *that issue* and may not raise it for the first time on appeal." (emphasis added)); *Vizcon v. State*, 771 So. 2d 3, 6 n.4 (Fla. 3d DCA 2000) (concluding to a challenge to nearly "identical" but chronologically overlapping counts did "not actually present a valid double jeopardy claim, but rather, at most, one of a defective information," an issue that "*is* subject to waiver by the failure to assert it in a timely attack on the information itself").

*criminal prohibitions under different criminal statutes* violate double jeopardy should not take into consideration the evidence adduced at trial but rather should be confined to a review of the charging document—a holding it described in case-specific terms that included the details of the multiple criminal prohibitions charged:

> We hold that[] to determine whether multiple convictions of solicitation of a minor, unlawful use of a two-way communications device, and traveling after solicitation of a minor are based upon the same conduct for purposes of double jeopardy, the reviewing court should consider only the charging document—not the entire evidentiary record.

*Lee*, 258 So. 3d at 1304.

Although the information in this case alleges that Mr. Dominguez's conduct occurred during the same time period (one that notably spanned more than four years),[6] the information asserts that he committed multiple violations of the *same* criminal statute, each of which indicates that the defendant violated the same prohibition on one or more occasions. Thus, the pertinent question was "whether conduct transgressing a single prohibition is subject to multiple punishments," that is, whether the offenses were the same "in fact." *See Trappman*, 384 So. 3d at 747. And that question could be answered by ascertaining whether the conduct underlying the separate charges "involve[d] separate acts." *See id.* That answer is readily apparent from the information filed

---

[6] Because the charging document brought separate counts, each alleging at least one violation of the same criminal prohibition, this case is different than *Lee* because it is clear that the separate counts are premised on separate conduct—regardless of the duration of the alleged time period. However, the lengthy duration of the time period specified in the information only serves to underscore that the charges were based on separate conduct and to undermine any reading of the information that suggests the State might have premised both counts on the same act or episode.

22

against Mr. Dominguez because the only explanation for the multiple counts alleging violations of the same criminal prohibition is that the State was alleging he committed the crime *twice*. *See id.* at 747 ("[M]ultiple punishments for violations of a single criminal prohibition are permissible if the prohibition is aimed at singular acts—as opposed to a continuous offense or course of criminal conduct—and the defendant's conduct involves separate acts stemming from 'successive impulses.' " (quoting *Blockburger*, 284 U.S. at 302)). Stated otherwise, the only way to read the information is to infer that it alleges a violation of the same criminal prohibition on more than one occasion. Similarly, in *Trappman*, the information, albeit for different reasons, evidenced the State's theory that the defendant engaged in distinct conduct for each count. *See id.* at 746 (recounting that "[Trappman] had initially committed battery by shoving Sergeant Bird, and that he separately committed aggravated battery by subsequently 'siccing' the dog on Bird" (alteration in original) (quoting *Trappman*, 325 So. 3d at 945)). And like *Trappman*, the charging document in this case is similarly free from the deficiency identified in *Lee*—it does not lack clarity "that the State relied on separate conduct to charge the offenses." *See Lee*, 258 So. 3d at 1304. In *Lee*, because it was impossible to tell whether the information was alleging more than one act, it was impossible to determine from the charging document whether the State was premising each count on "a single act transgressing more than one prohibition." *See Trappman*, 384 So. 3d at 747. But because in this case the State alleged that Mr. Dominguez violated the same criminal prohibition in multiple counts, each of which alleged that he committed a violation on at least one occasion during the specified time period, the information in this case can only be reasonably understood to be alleging that each count is

23

premised on a distinct offense that occurred on a different "occasion"—that is, each count is premised on separate conduct.

Thus, it is sufficiently clear from the information that the State *charged* multiple violations of the same criminal statute based on separate acts committed by Mr. Dominguez. *Cf. Batchelor v. State*, 193 So. 3d 1054, 1058 (Fla. 2d DCA 2016) ("One can imagine a scenario where convictions for both traveling to meet a minor and the unlawful use of a two-way communications device could be sustained. But such a scenario would require a charging document—unlike the one filed in this case—that distinguished the two acts as occurring separately, and that facts were adduced at trial to prove that the offenses were indeed committed as separate and distinct acts."). This, of course, is not to say that the State necessarily *proved* that each count was based on a separate offense for the purpose of avoiding a double jeopardy violation, but that is a separate question. And in light of the foregoing, it is apparent that under the circumstances of this appeal, this court need not confine its review to the charging document in order to answer that question. In scenarios like *Trappman* and this case, it is permissible—nay, *necessary*—for the reviewing court to look beyond the charging document and examine the evidentiary record to determine whether the convictions are based on distinct acts. Having already determined that the elements of the offenses at issue are the same or functionally the same for purposes of a double jeopardy analysis, *see* § 775.021(4) (explaining in subsection (a) when offenses "are separate" and explaining in subsection (b) exceptions to the rule), the remaining question is whether the offenses are also the same "in fact," *Trappman*, 384 So. 3d at 747.

24

Resolving whether two offenses are factually the same necessarily requires an examination of the circumstances of each case. Indeed, *Trappman* recognized both that the "touchstone of the analysis" is whether there were successive impulses to violate the criminal statute and also that it may be relevant for courts to consider "whether there was a separation of time, place, or circumstances" between the acts at issue. *Id.* at 754 ("Although a variation in the manner in which the prohibition is violated is not necessary to establish the existence of distinct acts, such variation may signal that the defendant's wrongdoing involves 'successive impulses' to violate the same prohibition and thus results in distinct acts warranting separate punishment for each act."). That inquiry makes little sense if confined to a review of the charging document. *Cf. Hayes v. State*, 803 So. 2d 695, 705 (Fla. 2001) ("We recognize that in determining whether multiple convictions for robberies or thefts or both are predicated on distinct and independent criminal acts or a single criminal act, it is difficult to formulate a bright-line rule because the determination is often fact-specific."). Rather, the inquiry is manifestly conducive to an examination of the evidentiary record. According to the record of the trial in this case and by concession of the parties,[7] it can be concluded that Mr. Dominguez's convictions on counts IV and V were supported by evidence of distinct acts. *See Pena-Vazquez*, 278 So. 3d at 762 ("Here, the evidence presented at trial differentiated the acts of lewd or lascivious molestation, in terms of time, place and circumstance, and established by competent substantial evidence that Pena-Vazquez engaged in distinct acts of lewd or lascivious molestation

---

[7] On appeal, Dominguez does not dispute that the "evidence" adduced at trial "reflect[s] distinct offenses."

25

on C.P., on separate dates and under identifiably different circumstances during the two-year time period alleged in the Amended Information.").

I conclude, as explained above, that it is most reasonable to presume that the counts as stated in the information in this case are based on separate conduct because the information read otherwise would presume a scrivener's error of a duplicated count or that the information merely makes no sense. I can perceive of no reason for a reviewing court to make such an unreasonable presumption.

However, I do not discount the possibility that reasonable jurists might conclude that the information as to counts IV and V could be understood to contain a distinct deficiency of the type that was identified in *Lee*. A reviewing court might be troubled by the mere possibility that in each of the two lewd and lascivious battery counts, the State could have charged Mr. Dominguez for two violations of the same criminal statute based on the same conduct on the same occasion—that is, that the State could have charged him twice for one commission of the crime that was not premised on distinct acts. I consider that to be an unreasonable reading of the information as to those two counts. Nonetheless, whether a charging document like the one in this case permits a reviewing court to look beyond it to assess whether evidence supports multiple convictions based on distinct conduct is a challenging question not neatly resolved by existing Florida Supreme Court case law. Consequently, I would certify the following questions of great public importance to the Florida Supreme Court:

> DOES THE RULE ESTABLISHED IN *LEE V. STATE*, 258 SO.
> 3D 1297 (FLA. 2018)—THAT REVIEWING COURTS MUST
> DETERMINE WHETHER MULTIPLE CONVICTIONS ARE
> BASED ON THE SAME CONDUCT BY CONSIDERING ONLY
> THE CHARGING DOCUMENT—APPLY WHEN THE STATE
> CHARGES A DEFENDANT IN SEPARATE COUNTS WITH

MULTIPLE VIOLATIONS OF THE SAME CRIMINAL STATUTE, THAT IS, MULTIPLE VIOLATIONS OF THE SAME CRIMINAL PROHIBITION?

FOR PURPOSES OF A DOUBLE JEOPARDY CLAIM, MUST THE STATE ALLEGE FACTUAL DETAIL IN THE INFORMATION SUFFICIENT TO INDICATE THAT MULTIPLE VIOLATIONS OF THE SAME CRIMINAL STATUTE ARE BASED ON DISTINCT ACTS, OR DO IDENTICAL COUNTS ALLEGING VIOLATIONS OF THE SAME CRIMINAL PROHBITION IN THE SAME STATUTE INDICATE WITH SUFFICIENT CLARITY THAT THE INDIVIDUAL COUNTS ARE EACH PREMISED ON SEPARATE CONDUCT SUCH THAT A REVIEWING COURT IS PERMITTED TO EXAMINE THE EVIDENTIARY RECORD TO DETERMINE WHETHER IT SUPPORTS THAT THE DISTINCT ACTS TEST HAS BEEN SATISFIED?

_____

Opinion subject to revision prior to official publication.